IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMANDA FRANCES, INC., <br><br> Plaintiff, <br><br> v. <br><br> PENGUIN RANDOM HOUSE LLC <br><br> Defendant. | Civil Action No. 23-cv-10986 <br><br> **JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT

Plaintiff Amanda Frances Inc. ("AF Inc."), through the undersigned counsel, brings this Complaint against Defendant Penguin Random House LLC ("Penguin Random House"). For its verified complaint, AF Inc. states, upon personal knowledge as to its own actions and the actions of Amanda Frances, and on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This is an action for injunctive relief based on trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a), unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), common law unfair competition, unfair trade practices under New York state law, unjust enrichment, and trademark dilution under New York state law.

## THE PARTIES

2.      Plaintiff Amanda Frances Inc. is a California corporation with its principal place of business at 15475 Milldale Drive, Los Angeles, CA 90077.

3.      Defendant Penguin Random House LLC is a Delaware limited liability company with its principal place of business at 1745 Broadway, New York, NY 10019.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over this action pursuant to 15 U.S.C. §§ 1116 and 1121 and 28 U.S.C. § 1331 and 1338. In addition, this Court has supplemental jurisdiction over all pendant state and common law claims set forth herein under 28 U.S.C. § 1367.

5.      Defendant is subject to this Court's personal jurisdiction pursuant to due process and/or the New York Long Arm Statute, due at least to its presence in the state, the substantial business conducted in this forum, directly and/or through intermediaries, including having solicited business in the State of New York, transacted business within the State of New York, and attempted to derive financial benefit from residents of the State of New York, including benefits directly related to the causes of action set forth herein, and having placed their products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in New York and in this District.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this District, and either resides in this District, has regularly conducted business in this District, and/or the events giving rise to this action, or a substantial part thereof, occurred in this District.

## STATEMENT OF FACTS

### *AF Inc.*

7.      Amanda Frances is a renowned thought leader on financial empowerment. Coming from humble beginnings in Oklahoma, Ms. Frances originally pursued a path of academia, working three jobs to put herself through school, and receiving a Master of Science degree in counseling from Southern Methodist University in 2013.  In 2014, she took a risk and decided to leave her dream PhD program to focus exclusively on her life coaching business that she had started as a side project while pursuing her master's degree. By the end of that year, Ms. Frances

2

had created her first digital course and begun shifting her focus to money and finances. Amanda Frances Inc. (AF Inc.) was incorporated in 2016. Ms. Frances is the president, sole shareholder, and only employee of the corporation.

8.     Building from the ground up, Ms. Frances quickly grew AF Inc. into a multimillion-dollar enterprise focused on financial growth and improving your money mindset. The core mission of her enterprise is to empower women to achieve the wealth they need to build the lives they desire by shifting their mindset and thoughts around money.

### Brand Development & Success

9.     Ms. Frances developed the AF Inc. brand strategically. The word "f*ck" was an intentional part of the AF Inc. brand from the beginning. Coming from a Christian ministry background, Ms. Frances figured that if she could say "God" and "f*ck" in the same sentence, potential clients would know that there was a spiritual element to her work, but that people from all walks of life would be welcome and safe with her.

10.    "AF" was also an important brand element from the beginning of AF Inc. Customer service representatives have called themselves "Team AF" in emails to customers since at least as early as February 2016. *See* Exhibit 1. Although AF was originally intended as a play on Ms. Frances's initials, 2016 was around the time that the term "AF" was gaining huge popularity as slang for "as f*ck,"[1] which fit the AF Inc. brand perfectly. Ms. Frances leaned into this double meaning, intentionally using the words "f*ck" and "AF" in her courses and marketing materials to create a bold, edgy brand.

11.    For example, courses over the years have included: "Building Your Mother F*cking Empire", "Show the F*ck Up,", and "Aligned As F*ck". Blog posts on

---

[1] *See* Exhibit 2.

amandafrances.com from over the years have been titled "Become a Mother F*cking Money Genius", "Let It Be F*cking Easy", "So Much F*cking Money", and "The F*cking Abundant Network Marketer". Products available on amandafrances.com include merchandise featuring the wording "Rich As F*ck" and "I Am Rich As F*ck". In 2017, Ms. Frances started a podcast called "And She Rises the F*ck Up". *See* Exhibit 3.

12.     Examples of AF Inc.'s longstanding use of AF as shorthand for "as f*ck" include blog posts such as: "How to Always Make the Right Decision (You can't fuck it up)" (May 7, 2018) ("The pressure is restricting AF."); Manifesting Your Ideal Body: Being Hot AF is Your Birthright (June 2019); "MONEY JUST IS: How to Create Certainty and Confidence with Money" (April 13, 2020) ("There are people sharing with me cool AF things that are happening as they enroll in the Energy and Frequency of Money Bundle."); "Expanding into New Financial Realities" (September 29, 2020) ("Instant access to seven hours worth of expansive AF content."); "God Doesn't Care if you Tithe (I said it)" (March 16, 2021) ("However, I have never run from controversy when it comes to shedding a little light and love on a heavy AF topic."); "Mini Bootcamp: How to Pay Off Debt Without Feeling Broke AF" (2017); "Aligned AF Living: Mastering the Four Principles" (December 11, 2023). Merchandise featuring the wording "I Am Rich AF" has been sold on amandafrances.com since as early as November 2016. And logos incorporating AF have been used since at least as early as 2016. *See* Exhibit 4.

13.     Another important part of the AF Inc. brand are the graphics and images used in advertising and selling AF Inc.'s products and services. Specifically, AF Inc. prominently features photos of Ms. Frances surrounded by dollar bills in a number of distinctive ways, creating an overall image of a powerful woman celebrating her abundance and wealth. *See* the examples below:













14.     The style and elements of these images were created through an intentional, creative collaboration between Ms. Frances and her photographer. In 2016, Ms. Frances had her first photo shoot with money. She knew that she had to do something bold and splashy, because money is not a topic you can tiptoe around: you have to go all in. Ms. Frances went to the bank and withdrew thousands of dollars in cash, and then sat down with her photographer to brainstorm. She had never seen an image of a woman in a bathtub full of dollar bills at that time, but that is what they decided to do, in Ms. Frances's own home bathtub. Every year since then, Ms. Frances and her photographer put their heads together to come up with a new creative photo shoot idea, featuring Ms. Frances's real dollar bills, trying out different poses and settings to achieve just the right look.

15.     By the end of 2017, AF Inc. was generating nearly $200,000 monthly and by 2020, AF Inc. was generating $5 million in annual revenue. AF Inc. continues to generate several million dollars in revenue every year. Course enrollments grew from roughly 600 customers in 2016 to nearly 4,000 in 2020, and AF Inc. continues to serve over three thousand paying consumers each year. The AF Inc. newsletter grew from a few thousand subscribers in 2017, to approximately 20,000 by the end of 2021, and today it has approximately 40,000 subscribers. Additionally, the newsletter has an exceptional percentage of subscribers who actually open the newsletter. Today, the newsletter has a 65% open rate on average, meaning that approximately 20,000 people open and view AF Inc. content every week. The "And She Rises the F*ck Up" podcast has had approximately 2.5 million downloads since its inception, and 24,000 downloads this month alone. And Ms. Frances has over half a million followers on Instagram, through which she posts content almost daily. Additionally, AF Inc. spends in the range of $300,000 – $500,000 annually in expenses related to marketing and promoting its financial advice products and services.

16.     The success of AF Inc. caught the attention of Defendant years ago. On September 11, 2019, an editor associated with Defendant who was "a long-time admirer" of Ms. Frances's financial advice and podcast emailed Ms. Frances to discuss the possibility of turning her work into a book, to be published by Penguin Random House. *See* Exhibit 5. The editor was associated with a division of Defendant called Portfolio, which focuses on nonfiction books featuring "authors [who] are innovators, entrepreneurs, and experts who aren't afraid to take risks and change the world, and who reflect the diversity of voices, identities, experiences, and goals we see in our community of readers." *See* Exhibit 6.

17.     In fact, at that time, Ms. Frances had already begun formulating a plan to publish a book. Ms. Frances carefully considered Defendant's offer, but ultimately declined, having assessed

that it would be a better business decision to self-publish her book in order to have the most control over the branding and content of her book, and to retain a larger share of the proceeds.

18.     From October 2019 to December 2020, Ms. Frances worked tirelessly on her book, squeezing in hours of writing during the evenings and weekends, while still running and growing her business during the regular work week. In line with her typical innovative spirit, she also launched a unique type of "book club" to allow fans to follow along on the book writing journey. Over 300 people enrolled, reviewing new chapters of the book as Ms. Frances finished writing them. Book club members would eagerly await the release of each new chapter over the course of 14 months, adding to the buildup and buzz of the book ultimately being released.

19.     Ms. Frances knew early on in the process that she would call the book *Rich As F*ck* because it fit perfectly into the AF Inc. brand: f*ck, "as f*ck", and its shorthand AF had long been elements that Ms. Frances had consciously used in the promotion and sales of her products and services.

20.     AF Inc. launched the *Rich As F*ck* book on December 17, 2020 as an ebook on Amazon, and it was an immediate success. Within its first week, *Rich As F*ck* had sold over 5,000 copies and was listed on numerous Amazon bestseller lists, including Business & Investing, Spirituality, Women & Business, New Age Religion & Spirituality, Budgeting & Money Management, Religion & Spirituality, and Self-Help. A month after its release as an ebook, a paperback version of *Rich As F*ck* was released. In December of 2021, the audiobook version of *Rich As F*ck* was released.

21.     Each version of the book shot to number one on Amazon in categories such as Women in Business, Spirituality, Economics, and Personal Finance. The ebook version was #19 in most sold books in all of Amazon's Kindle Store the day it was released. For perspective,

8

President Barack Obama's memoir *A Promised Land*, which debuted one month earlier, was listed at #8 at the time. Additionally, the audiobook was the fastest growing book in all of Audible within 48 hours of being released. The book is now available for purchase in multiple formats at retailers such as Target, Barnes & Noble, Books-A-Million, Walmart, and Powell's, among others. *See* Exhibit 7. To date, the *Rich As F\*ck* book has sold approximately 130,000 copies. The book continues to perform well over three years after its publication. For example, *Rich As F\*ck* generated over $13,000 in sales in November 2023 alone, and it continues to be featured as a Best Seller in Amazon's Kindle Store. It also has over 4,000 5-star reviews across Goodreads and Amazon.

22.      The book has been so successful that Ms. Frances ultimately created a digital course about self-publishing, through which she teaches her audience why they should forego working with traditional publishers like Defendant to make more money and retain more control through self-publishing. The course has generated nearly $1 million in revenue.

### Trademark Rights in Rich As F\*ck

23.      Since the publication of the *Rich As F\*ck* book over three years ago, the designation Rich As F\*ck has been exclusively associated with AF Inc. and Amanda Frances in connection with financial advice books and related products. On information and belief, no other financial advice book or related product has been available for purchase using this title or a confusingly similar designation over the last three years until Defendant began offering for presale the *Rich AF* book at issue. Based on AF Inc's longstanding, exclusive use of the designation Rich As F\*ck in connection with a financial advice book, consumers have come to recognize Rich As F\*ck not merely as the title of a book, but rather as a designation of source, namely, that financial advice books and related products or services sold or marketed in connection with the designation Rich

As F*ck originate from or are associated with Amanda Frances and AF Inc. This consumer association establishes secondary meaning, such that AF Inc. has protectable trademark rights in Rich As F*ck.

24.    The secondary meaning associated with Rich As F*ck is further supported by the overwhelming success of the *Rich As F*ck* book, as well as the fact that AF Inc. has invested significantly in advertising and promoting the *Rich As F*ck* book, which has had widespread consumer reach. The *Rich As F*ck* book generates in the range of $140,000 – $250,000 in revenue every year and remains listed as a bestseller on Amazon. Additionally, the book has been featured on large billboards in high traffic areas such Times Square and West Hollywood, an expenditure of nearly $10,000. AF Inc. also hosted a book launch party for *Rich As F*ck*, an expense of over $16,000. And Ms. Frances dedicated an episode of her podcast to promoting the *Rich As F*ck* book, which has been downloaded approximately 20,000 times. Media outlets have also extensively covered the *Rich As F*ck* book. Ms. Frances and *Rich As F*ck* have been featured in magazines such as *Cosmopolitan*, *Life & Style, In Touch, Flaunt, OK!, E!, Us Weekly, Entrepreneur*, *Forbes*, *GOSS*, *The Blast*, *Entertainment Tonight*, and *Glamour UK*. Ms. Frances and *Rich As F*ck* have also been featured in numerous podcasts and blogs, such as The Mastery Matrix, The Sam Skelly Show, Earn Your Happy with Lori Harder, What Savvy Said, Wholeness with Melissa Kathryn, Striving for Felicity, and Home Cyn Home, among many others. *See* examples at Exhibit 8. The majority of this coverage has been unsolicited and organic.

### *The AF Inc. Trade Dress*

25.    In addition to having trademark rights in the designation Rich As F*ck by itself, AF Inc. has trade dress rights in the unique combination of elements that create a distinctive look and feel used to present AF Inc.'s goods and services to consumers. Specifically, AF Inc.'s trade

dress consists of a combination of the following features: (1) the word "f*ck"; (2) the acronym AF; (3) the designation Rich As F*ck; and (4) images of a woman in creative poses surrounded by dollar bills (collectively defined as "AF Inc.'s Trade Dress" or "the AF Inc. Trade Dress"). These elements in combination create an overall look and feel of an empowered modern woman celebrating her abundance and success, which is distinctive, protectable trade dress.

### *Defendant's Improper Conduct*

26.    Defendant Penguin Random House is one of the largest publishing companies in the world, headquartered in New York.

27.    Author Vivian Tu is a former Wall Street trader who offers financial tips and tricks via social media, her website yourrichbff.com, and a podcast called "Networth and Chill."

28.    Penguin Random House recently began offering for presale a book authored by Ms. Tu called *Rich AF*.

29.    AF is synonymous with "as f*ck", such that the titles *Rich As F*ck* and *Rich AF* are essentially identical. *See* Exhibit 9. Because the titles are essentially the same, consumers and commentators frequently refer to the *Rich As F*ck* book written by Ms. Frances as *Rich AF*, and, in fact, some of AF Inc.'s advertisements of the *Rich As F*ck* book use the shorthand Rich AF. *See* Exhibit 10.

30.    *Rich AF* by Vivian Tu is being published by Defendant Penguin Random House under its Portfolio division, the same division that initially expressed interest in publishing a book by Ms. Frances in 2019.

31.    The launch date of *Rich AF* is set for December 26, 2023. Presale orders are currently being taken online through retailers such as Amazon, Target, Barnes & Noble, Books-

A-Million, Hudson Booksellers, and Powell's. *See* Exhibit 11. These trade channels are identical to the trade channels of the *Rich As F\*ck* book.

32.     The tagline on the *Rich AF* book cover is "The Winning Money Mindset That Will Change Your Life." *Rich AF* is branded as a "money mindset" book, specifically targeting consumers seeking to learn how shifting their mindset and thoughts can impact financial success. These are the exact consumers who are purchasers of the *Rich As F\*ck* book and AF Inc's related products and services.

33.     In addition to copying the title of AF Inc.'s book, Defendant has copied elements of AF Inc.'s Trade Dress. Specifically, the cover of *Rich AF* features an image of Ms. Tu in a pose similar to images of Ms. Frances used to promote the goods and services of AF Inc., with money raining down around her:



34.     Other images used to the promote the *Rich AF* book show Ms. Tu in a white bathtub full of dollar bills, and a photo of Ms. Tu with dollar bills fanned out in front of her. The images are strikingly similar to elements of AF Inc.'s Trade Dress. *See* the comparisons below:



(Amanda Frances)



(Vivian Tu)



(Amanda Frances (top), Vivian Tu (bottom))        (Amanda Frances (top), Vivian Tu (bottom))

35.     The similarities between the images used to promote the *Rich AF* book and the trade dress of AF Inc. are so striking that they cannot be coincidental.

36.     Moreover, Defendant's use of the term AF, the title *Rich AF*, and the above images of Ms. Tu in the same style as Ms. Frances create the same overall look and feel as the AF Inc. Trade Dress, such that the public is likely to associate the *Rich AF* book with AF Inc. and Ms. Frances.

37.     In fact, consumers have already begun expressing confusion as to whether the *Rich*

*AF* book is affiliated with Amanda Frances and/or AF Inc. *See* the examples below[2]:



[2] Screenshots taken from the comments section of a post on the public Instagram account of Vivian Tu, @yourrichbff, promoting the Rich AF book.

15

38.     Defendant had knowledge of Ms. Frances, AF Inc., the *Rich As F\*ck* book and title, and AF Inc.'s Trade Dress well before it began promoting and offering for presale the *Rich AF* book.

39.     Specifically, Ms. Frances and AF Inc. were clearly known to Penguin Random House years ago, given its outreach to Ms. Frances in September 2019 expressing interest in publishing a book by her. Moreover, *Rich AF* is being published by Defendant under its Portfolio division, the same division that initially expressed interest in publishing a book by Ms. Frances in 2019. Given the success of *Rich As F\*ck* in categories that Defendant's Portfolio division exclusively focuses on, it is implausible that Defendant was unaware of the *Rich As F\*ck* book and AF Inc. and highly plausible that Defendant knowingly and willfully infringed the Rich As F\*ck trademark rights and AF Inc. Trade Dress.

40.     In fact, Ms. Tu acknowledged Defendant's knowledge of AF Inc. and the *Rich As F\*ck* book in a recent Instagram comment. On November 6, 2023, Ms. Tu posted a video on her public Instagram account, @yourrichbff, promoting the upcoming launch of *Rich AF*. An Instagram user posted a comment asking if Ms. Tu was aware that there is already a financial empowerment book with the same title written by Amanda Frances. Ms. Tu responded "I'm signed with Penguin Randomhouse and we did do market research! Her book was a self-published manifestation book and my team of editors felt it wasn't similar in terms of content given mine if [sic] more actual finance focused!"[3] *See* Exhibit 12.

---

[3] The contents of the *Rich AF* book are not at issue in the instant action and does not change the fact that Defendant knew about the *Rich As F\*ck* book and proceeded to promote a book with essentially the same title and trade dress elements. Moreover, *Rich AF* is advertised as a "money mindset" book, targeting the same consumers as the *Rich As F\*ck* book.

41.     On information and belief, Defendant is intentionally marketing a book under a title that is nearly identical title to *Rich As F\*ck* and copying elements of the AF Inc. Trade Dress in order to trade on the goodwill created by AF Inc. and boost sales of its own book.

42.     Defendant's use of a book title that is nearly identical to *Rich As F\*ck*, targeting overlapping consumers through identical trade channels, is likely to cause consumer confusion with AF Inc. and Amanda Frances, including confusion among consumers that there is an association between on the one hand AF Inc., Amanda Frances, and the *Rich As F\*ck* book, and on the other the *Rich AF* book published by Defendant and its author Vivian Tu.

43.     Defendant's use of an overall look and feel that is strikingly similar to the AF Inc. Trade Dress in connection with the sale and promotion of the *Rich AF* book is likely to cause consumer confusion with AF Inc., Amanda Frances, and her *Rich As F\*ck* book.

### Notice to Defendant

44.     AF Inc. only recently learned of Defendant's plans to launch the *Rich AF* book, and promptly took action. On December 11, 2023, lawyers for AF Inc. served Defendant with a demand to cease and desist its plans to launch the *Rich AF* book.

45.     Defendant acknowledged receipt of the demand letter on December 13, 3023.

46.     Defendant elected to disregard AF Inc.'s demands and proceed with its plans to launch the *Rich AF* book.

47.     As of the date of this filing, the *Rich AF* book remains available for preorder sales, and promotions of the book continue to be featured online and via social media.

48.     Once the *Rich AF* book is released, continued and widespread consumer confusion is inevitable, and the harm to AF Inc. will be irreparable. Therefore, AF Inc. was left with no choice but to initiate the instant action.

### FIRST CLAIM FOR RELIEF

***Federal Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a))***

49.     Plaintiff repeats and incorporates by reference the allegations set forth above as though fully set forth herein.

50.     AF Inc. has trademark rights in the designation Rich As F*ck in connection with financial advice products and services, as AF Inc.'s *Rich As F*ck* book title has acquired secondary meaning through AF Inc.'s long-term exclusive use of the Rich As F*ck designation in connection with financial advice products and services, as well as the significant sales success, advertising expenditures and reach, and media coverage of Rich As F*ck.

51.     Defendant's *Rich AF* title is nearly identical to, and creates the same overall commercial impression as, AF Inc.'s *Rich As F*ck* book title.

52.     Defendant's use of the title *Rich AF*, which is nearly identical to AF Inc.'s Rich As F*ck trademark, in interstate commerce in connection with manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of the *Rich AF* book, targeting overlapping consumers through identical trade channels, is causing and is likely to continue causing consumer confusion, mistake, and/or deception as to whether an association exists between the *Rich AF* book, published by Defendant, and AF Inc. and/or Amanda Frances, or that Defendant is a licensee, authorized distributor, and/or affiliates of AF. Inc. or Amanda Frances, and/or AF Inc.'s *Rich As F*ck* book, or that Defendant is authorized, endorsed, sponsored, or approved by AF Inc. AF Inc. has not consented to Defendant's use of the *Rich AF* book title featured in connection with Defendant's *Rich AF* book for any purpose.

53.     Defendant had actual and constructive knowledge of AF Inc.'s superior rights in and to Rich As F*ck prior to Defendant's adoption and use of the *Rich AF* book title, and

Defendant is using and intends to continue using the *Rich AF* book title with actual knowledge of its infringing conduct.

54.     Defendant has copied, adopted, and/or used and will continue to use the *Rich AF* book title in interstate commerce in furtherance of Defendant's willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of AF Inc.'s *Rich As F\*ck* book.

55.     Defendant has made, and will continue to make, substantial profits and gain from its use of the *Rich AF* book title in interstate commerce on, for, and/or in connection with its manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of its *Rich AF* book, to which Defendant is not entitled at law or in equity.

56.     Defendant's acts and conduct complained of herein constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a).

## SECOND CLAIM FOR RELIEF

### *Federal Trade Dress Infringement (15 U.S.C. § 1125(a))*

57.     Plaintiff repeats and incorporates by reference the allegations set forth above as though fully set forth herein.

58.     AF Inc. is the exclusive owner of all rights, title, and interest in and to AF Inc.'s Trade Dress.

59.     AF Inc.'s rights in and to AF Inc.'s Trade Dress predate any rights that Defendant could claim in and to its use of AF Inc.'s Trade Dress or confusingly similar trade dress in connection with the sale and promotion of the *Rich AF* book.

60.     AF Inc.'s Trade Dress is non-functional.

61.     AF Inc.'s Trade Dress is distinctive as to the source of AF Inc.'s *Rich As F\*ck* book and related products and services.

62.     Based on extensive marketing, promotion, use, and widespread consumer reach, AF Inc.'s Trade Dress has acquired secondary meaning because consumers associate AF Inc. as the source of the *Rich As F\*ck* book and related products and services featuring AF Inc.'s Trade Dress.

63.     Defendant has used in commerce, without AF Inc.'s permission, AF Inc.'s Trade Dress or confusingly similar trade dress in connection with products that Defendant designs, manufactures, distributes, promotes, advertises, offers for sale, and/or sells in the United States, namely, the *Rich AF* book.

64.     Defendant's use in commerce of AF Inc's Trade Dress or confusingly similar trade dress to advertise, market, promote, distribute, offer for sale, and/or sell Defendant's *Rich AF* book has caused or is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that there is an association between the *Rich AF* book published by Defendant and AF Inc. and/or Amanda Frances, or that Defendant is a licensee or authorized distributor of AF Inc., or that the *Rich AF* book published by Defendant is authorized, endorsed, sponsored, or approved by AF Inc.

65.     Defendant adopted and began using confusingly similar elements that overlap with and are confusingly similar to AF Inc.'s Trade Dress in furtherance of Defendant's willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill and commercial success of AF Inc.'s *Rich As F\*ck* book and related products and services associated with AF Inc.'s Trade Dress.

66.     Defendant has made, and will continue to make, substantial profits and gain from the sale of products featuring Defendant's confusingly similar trade dress, to which it is not entitled in law or equity.

67.     Defendant's acts and conduct complained of herein constitute federal trade dress infringement in violation of 15 U.S.C. § 1125(a).

68.     AF Inc. has suffered, and will continue to suffer, irreparable harm from Defendant's use of its confusingly similar infringing trade dress, unless restrained by law.

69.     AF Inc. has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF

### *Common Law Unfair Competition*

70.     Plaintiff repeats and incorporates by reference the allegations set forth above as though fully set forth herein.

71.     AF Inc. is the exclusive owner of all trademark and trade dress rights, title, and interest in and to the *Rich As F*ck* book title and the AF Inc. Trade Dress. No license or authorization has been granted to Defendant to use the *Rich As F*ck* title, the AF Inc. Trade Dress, or any similar variations thereof.

72.     AF Inc.'s Trade Dress is non-functional and inherently distinctive in connection with books and finance courses.

73.     AF Inc. has acquired secondary meaning in the AF Inc. Trade Dress and the title *Rich As F*ck* through extensive marketing, promotion, use, and widespread consumer reach.

74.     Defendant has engaged in a course of unfair competition by marketing and selling the *Rich AF* book, by marketing and selling the *Rich AF* book having AF Inc.'s Trade Dress, and by specifically targeting AF Inc.'s customers.

75.     Defendant has reproduced, copied, and imitated AF Inc.'s Trade Dress and *Rich As F*ck* title in connection with advertising, promoting, offering to sell, and/or selling the *Rich AF* book featuring infringing trade dress similar to that illustrated in connection with the *Rich As F*ck* book, in competition with AF Inc. and without AF Inc.'s consent.

76.     Defendant, with full knowledge of AF Inc.'s rights in the *Rich As F\*ck* title and the AF Inc. Trade Dress, has traded on the goodwill associated therewith in bad faith, and has misled and will continue to mislead the public into assuming an association between the *Rich AF* book and AF Inc., even though such use is not authorized by AF Inc.

77.     The acts and conduct of Defendant alleged herein are indicative of bad faith and are a specifically oriented predatory business practice undertaken by Defendant, the dominant purpose and effect of which is to pass off and palm off Defendant's *Rich AF* book as related to, provided by or authorized by AF Inc. and to confuse customers as to the source or origin of such goods. The acts and conduct of Defendant as alleged herein also amount to the unauthorized trading off by Defendant of the goodwill long established by AF Inc. in its *Rich As F\*ck* book title and AF Inc.'s Trade Dress.

78.     Defendant's *Rich AF* book title and its infringing trade dress are nearly identical to, and create the same overall commercial impression as, AF Inc.'s Trade Dress and the *Rich As F\*ck* title

79.     Defendant's *Rich AF* book title and its related trade dress appeal to customer bases which overlap with those of AF Inc.'s *Rich As F\*ck* book and related products and services.

80.     Consumers encounter Defendant's *Rich AF* book title and its infringing trade dress in overlapping and, in some instances, identical trade channels as AF Inc.'s *Rich As F\*ck* book and related products and services.

81.     Defendant's use of the *Rich AF* title and the infringing trade dress in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of Defendant's *Rich AF* book is causing and is likely to continue causing consumer confusion, mistake, and/or deception about whether there is an association between the book published by

Defendant and AF Inc., or whether Defendant is a licensee, authorized distributor, and/or affiliate of AF. Inc., or that the *Rich AF* book is otherwise authorized, endorsed, sponsored, or approved by AF Inc.

82.    Defendant's activities in misappropriating AF Inc.'s Trade Dress and *Rich As F\*ck* book title, has damaged, and will, unless restrained by this Court, continue to damage the reputation and goodwill of AF Inc.

83.    Defendant's acts and conduct complained of herein constitute unfair competition in violation of New York common law.

### FOURTH CLAIM FOR RELIEF

*Unfair Trade Practices (New York Gen. Bus. Law § 349)*

84.    Plaintiff repeats and incorporates by reference the allegations set forth above as though fully set forth herein.

85.    Defendant has engaged in deceptive acts and practices in the conduct of its business, trade, or commerce by using the *Rich AF* title and AF Inc.'s Trade Dress or confusingly similar trade dress. Such use is materially misleading consumers and is likely to continue misleading consumers into falsely believing that the *Rich AF* book published by Defendant originates from, is authorized by, or is affiliated with AF Inc. or Amanda Frances.

86.    Defendant's use of the *Rich AF* book title and infringing trade dress in connection with the advertisement, offer for sale, and sale of books has a broad impact on consumers at large.

87.    AF Inc. has suffered injury as a result of Defendant's deceptive acts, as Defendant's use of the *Rich AF* book title and the infringing trade dress has and will continue to cause the loss of goodwill and the loss of current and prospective customers of AF Inc. Additionally, Defendant has made, and will continue to make, substantial profits and gains, which it is not entitled to receive, whether in law or equity.

88.     Defendant intends to continue its deceptive conduct.

89.     AF Inc. has been and will continue to be irreparably harmed unless Defendant is enjoined and restrained from further unlawful use of the Rich AF title and the infringing trade dress.

## FIFTH CLAIM FOR RELIEF

### *Trademark Dilution (New York Gen. Bus. Law § 360-I)*

90.     Plaintiff repeats and incorporates by reference the allegations set forth above as though fully set forth herein.

91.     AF Inc.'s Trade Dress is inherently distinctive in connection with books and finance courses. Moreover, AF Inc. has acquired secondary meaning in the AF Inc. Trade Dress and the title *Rich As F\*ck* through extensive marketing, promotion, use, and widespread consumer reach.

92.     Defendant is marketing and selling a competing product under a nearly identical title to *Rich As F\*ck* and using trade dress that is confusingly similar to AF Inc.'s Trade Dress. Such actions dilute the distinctive quality of, and reputation associated with, AF Inc.'s Trade Dress and the *Rich As F\*ck* title, and erodes the identification of the AF Inc. Trade Dress and the *Rich As F\*ck* title with AF Inc.

93.     Defendant's conduct constitutes trademark dilution in violation of Section 360-l of the New York General Business Law.

94.     Such conduct by Defendant is without the permission, license, or consent of AF Inc. and will continue to cause irreparable injury unless enjoined by the Court.

## SIXTH CLAIM FOR RELIEF

### *Unjust Enrichment*

95.     Plaintiff repeats and incorporates by reference the allegations set forth above as though fully set forth herein.

96.     Defendant has been unjustly enriched by illegally using and misappropriating trademark and trade dress rights owned by AF Inc.

97.     In equity and good conscience, Defendant should not be entitled to retain and benefit from the value of the time, effort, and money AF Inc. has invested in developing the goodwill associated with AF Inc.'s Trade Dress and the *Rich As F\*ck* title.

98.     Defendant's actions have damaged and will continue to damage AF Inc.

## PRAYER FOR RELIEF

WHEREFORE, AF Inc. respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

A.  Enjoining and restraining Defendant, its officers, agents, servants, employees, successors, and all persons acting in concert with them from the marketing, promoting, offering for sale, selling, and distributing a book titled *Rich AF*.

B.  Enjoining and restraining Defendant, its officers, agents, servants, employees, successors, and all persons acting in concert with them from the marketing, promoting, offering for sale, selling, and distributing products or services that infringe AF Inc.'s trade dress.

C.  Entering orders requiring such affirmative acts as are appropriate to protect AF Inc.'s rights in the *Rich As F\*ck* title and AF Inc's trade dress, including but not limited to:

    a.   Ordering Defendant to cease shipments of the *Rich AF* book based on presale orders that have been placed;

    b.  Ordering Defendant to recall all copies of the *Rich AF* book that have already shipped;

    c.  Ordering the destruction of all printed copies of the *Rich AF* book and the removal of electronic versions of the *Rich AF* book from all storefronts;

    d.  Ordering Defendant to destroy, take down, remove from public display, and cease distributing all promotional materials related to the *Rich AF* book; and

    e.  Ordering defendant to remove all images that infringe AF Inc.'s trade dress from all websites, social media accounts, and publications.

D.  Ordering Defendant to account for and pay to AF Inc. all gains, profits, and savings derived from its improper conduct;

E.  Awarding AF Inc. restitution for Defendant's unjust enrichment;

F.  Ordering Defendants to pay AF Inc. the damages sustained by AF Inc. as a result of Defendant's unlawful acts, including damages measured by the value of the benefit obtained by Defendant;

G.  Finding that Defendant's conduct has been willful and deliberate, and thereby awarding AF Inc. increased damages, costs, expenses, and attorneys' fees, as allowed by agreement or law;

H.  Ordering Defendant to pay exemplary and punitive damages in an amount sufficient to punish Defendant and to deter similar conduct in the future;

I.  Awarding such other relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, AF Inc. demands a trial by jury in this action of all issues so triable.

Dated: December 19, 2023

                                         By:  /s/ Thomas M. Kenny
                                         Thomas M. Kenny
                                         SPIRO HARRISON & NELSON LLC
                                         363 Bloomfield Avenue, Suite 2C
                                         Montclair, NJ 07042
                                         (973) 232-0890
                                         tkenny@shnlegal.com

Joseph F. Marinelli (*pro hac vice* pending)
jmarinelli@fitcheven.com
Danielle K. Muñoz (*pro hac vice* pending)
dmunoz@fitcheven.com
Kerianne A. Strachan (*pro hac vice* pending)
kstrachan@fitcheven.com
FITCH, EVEN, TABIN & FLANNERY LLP
120 South LaSalle Street, Suite 2100
Chicago, Illinois 60603
Telephone: (312) 577-7000
Facsimile: (312) 577-7007

*Attorneys for Plaintiff*
*Amanda Frances, Inc.*

## VERIFICATION OF COMPLAINT

I, Amanda Frances, am the President of Amanda Frances, Inc, the Plaintiff in this

proceeding. I have read this Complaint and hereby verify that the contents are true and correct to

the best of my knowledge, information, and belief this __19__ day of December, 2023.

State of California
County of _Los Angeles_
Signed and sworn before me on this _19_ day of December 2023.

Notary Public
My Commission Expires: 03-05-2027

A notary public or other officer completing this certificate verifies only the identity of the
individual who signed the document to which this certificate is attached, and not the
truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA, COUNTY OF _Los Angeles_

Subscribed and sworn to (or affirmed) before me on this _19_ day of

_December_ 20 _23_ by _Amanda Frances_

proved to me on the basis of satisfactory evidence to be the person(s) who appeared
before me.

(Signature of Notary)



J. R. ATLAS
Notary Public · California
Los Angeles County
Commission # 2437612
My Comm. Expires Mar 5, 2027